UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
———————————————————————————          )
UNITED STATES OF AMERICA,            )
                                     )
                                     )
          v.                         )    Criminal Action
                                     )    No. 12-10344-PBS
STANLEY GONSALVES,                   )
                                     )
               Defendant.            )
———————————————————————————          )
```

## MEMORANDUM AND ORDER

May 15, 2019

Saris, C.J.

Defendant Stanley Gonsalves was convicted at trial of a host of charges stemming from his operation of an oxycodone-trafficking ring on Cape Cod. He moves under 28 U.S.C. § 2255 to vacate his sentence on the basis that his trial and appellate attorneys rendered ineffective assistance of counsel. After review of the briefing and the record, the Court **DENIES** Gonsalves's motion (Docket No. 507).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the case from the First Circuit's opinion affirming Gonsalves's conviction and recounts below only the facts material to his motion to vacate. See United States v. Gonsalves, 859 F.3d 95 (1st Cir. 2017).

1

Starting in 2009, Gonsalves began to purchase oxycodone pills in bulk from a Florida man named John Willis. Willis was Gonsalves's primary supplier. Gonsalves and Willis paid runners to carry money to Florida to buy pills from Willis. The runners, who included friends, family, girlfriends, and exes, transported at least one thousand pills per trip, though some carried many more. Willis hid the pills in vitamin bottles, which he doctored to look never-opened, and gave them to the runners to bring to Massachusetts. Gonsalves packaged the pills into packs of one hundred, which he sold to lower-level drug dealers. Gonsalves paid Willis between $14 and $17 per pill and resold them for between $19 and $21. Over the three years of the scheme, Gonsalves brought around 371,327 oxycodone pills to Cape Cod.

On November 1, 2012, after law enforcement busted his operation, Gonsalves was indicted for conspiracy to possess with intent to distribute and to distribute oxycodone in violation of 21 U.S.C. § 846. Two superseding indictments added charges for money laundering conspiracy in violation of 18 U.S.C. § 1956(h); concealment money laundering in violation of 18 U.S.C. § 1956(a)(1); unlawful monetary transactions in violation of 18 U.S.C. § 1957; possession of a firearm in furtherance of a drug trafficking conspiracy in violation of 18 U.S.C. § 924(c); and drug and money laundering forfeiture allegations under 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1).

Gonsalves's trial lasted eighteen days with testimony from thirty-four witnesses. Two witnesses testified about his possession of a rifle. Mathew Hernon, the brother of an ex-girlfriend of Gonsalves named Alexa Doran, testified that, while he was playing video games at Gonsalves's house at the age of fifteen, Gonsalves took an AR-15 rifle out of a case from behind the couch, cocked it, and cleaned it. The weapon was not loaded. Gonsalves told Hernon the rifle was stolen from the police and he had it for protection because he thought someone was going to rob him. Hernon saw the firearm one more time a few weeks later.

Doran, the ex-girlfriend, also testified that Gonsalves kept a rifle in a black case behind the couch at his home for a few weeks. She and Gonsalves were distributing pills out of and counting money in the house when the gun was present. Gonsalves told her he did not have any bullets for the rifle and he bought the firearm because it was cool. She never saw Gonsalves fire the rifle, but he talked about shooting a gun at a friend's house.

At the end of trial, Gonsalves moved for a directed verdict. With respect to the § 924(c) charge, he argued that "a reasonable jury could not conclude beyond a reasonable doubt that [he] possessed guns no matter a real one in furtherance of a drug transaction." Dkt. No. 303. at 4. The Court denied the motion. On October 9, 2014, the jury convicted Gonsalves on all counts. For the § 924(c) conviction, the jury found that he possessed the

3

rifle about which Hernon and Doran had testified in furtherance of his oxycodone-trafficking conspiracy.

The jury then heard additional arguments and instructions on the forfeiture allegations. The following day, the jury found $23,503 in cash, two cars, and a house subject to forfeiture. The jury also calculated $5,074,575 as the "total gross proceeds of the oxycodone conspiracy," $3,552,203 of which was "reasonably foreseeable to" Gonsalves. Dkt. No. 318 at 2-3.

The Court sentenced Gonsalves on June 12, 2015. To determine the drug quantity for his base offense level under U.S.S.G. § 2D1.1, the Court divided the gross proceeds the jury attributed to him at the forfeiture trial ($3,552,203) by $20, the average sales price per pill, and then added the number of pills that were seized (and thus could not have been forfeited). This calculation attributed 177,610 pills to Gonsalves, which resulted in a base offense level of 36. The Court expressly rejected the Government's proposal to attribute 371,327 pills to Gonsalves based on conservative calculations from the testimony of various runners and suppliers about how many pills they trafficked, although such a methodology would have led to the same base offense level. With enhancements for money laundering, possessing a dangerous weapon, serving as an organizer, and involving a minor in the crime, Gonsalves received a total offense level of 43 and a guidelines recommendation of life. Under the statute and

guidelines, the § 924(c) conviction called for a minimum sentence
of five years to run consecutively to the sentence imposed for
the trafficking offenses.

During the argument, the Court stated that Gonsalves was
"going to get a non-Guideline sentence." Dkt. No. 476 at 24:5-6.
Accordingly, the Court sentenced him to a term of twenty-five
years of imprisonment:

> Actually, the government stole my show a little bit
> because I did think 25 years was what was appropriate
> here and not 30. I think that's sufficient but not
> greater than necessary to serve the purposes of
> punishment -- that is, deterrence -- the gravity of
> the offense, giving you a proportionate punishment to
> other people in similar situations in this conspiracy,
> and also essentially making sure that the deterrence
> goes out to the community that oxycodone is something
> that is harmful and that we take seriously.
>
> Even if my criminal Guideline sentencing turns out to
> be incorrect in some [respect], this is what I think
> is sufficient but not greater than necessary to serve
> the purposes of punishment. I think the 851 is
> irrelevant. There's the 20 years on Count 1 regardless
> of the 851, and then there's a five-year on and after
> from the 924(c).

Id. at 37:18-38:7.

Gonsalves appealed his conviction and sentence to the First
Circuit. As relevant here, he argued the Government presented
insufficient evidence for the jury to convict him of the § 924(c)
charge. Gonsalves, 859 F.3d at 110. The First Circuit rejected
this argument. Id. at 111-12. In particular, the court explained
that "a gun kept near a drug distribution point for protection

from robbery of drug-sale proceeds may reasonably be considered to be possessed in furtherance of an ongoing drug-trafficking crime." Id. at 111 (cleaned up). Accordingly, the testimony from Doran and Hernon that Gonsalves "kept the gun behind the couch where he distributed oxycodone pills and counted drug money" and "had the rifle for protection in case someone tried to rob him" was sufficient to establish that he possessed a firearm in furtherance of a drug trafficking offense. Id.

Gonsalves also challenged his sentence of twenty-five years as procedurally unreasonable because the Court miscalculated the guidelines range by overestimating the quantity of drugs attributable to him. Id. at 112-13. The First Circuit reviewed his claim for plain error, as he did not object on this basis during sentencing. Id. at 113. The First Circuit held that Gonsalves failed to show that the error affected his substantial rights, i.e., that there was a reasonable probability that he would have received a lower sentence without the error, because the Court made clear its sentence was based not on the guidelines range but instead on ensuring proportionality with his co-conspirators' sentences. Id.

Gonsalves filed a petition for writ of certiorari with the United States Supreme Court, which was denied on January 8, 2018. He filed a timely motion under 28 U.S.C. § 2255 to vacate his sentence on January 7, 2019. See Clay v. United States, 537 U.S.

522, 527-28 (2003) (noting that a conviction becomes final for the purposes of the one-year statute of limitations for a § 2255 motion when the Supreme Court denies certiorari).

## DISCUSSION

### I. Legal Standard

#### A. 28 U.S.C. § 2255

A federal criminal defendant "may petition for post-conviction relief under 28 U.S.C. § 2255(a) if, inter alia, the individual's sentence 'was imposed in violation of the Constitution or laws of the United States' or 'is otherwise subject to collateral attack.'" Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018) (quoting 28 U.S.C. § 2255(a)). Claims of ineffective assistance of counsel are cognizable on a § 2255 motion. Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016). The defendant bears the burden of establishing his entitlement to relief. Lassend, 898 F.3d at 122.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm," and the defendant bears "a heavy burden . . . to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003). A court need not hold an evidentiary hearing if the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Id. (quoting United States v.

DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978)). Because the record in this case demonstrates that all of Gonsalves's claims lack merit, the Court declines to hold an evidentiary hearing.

## B. Ineffective Assistance of Counsel

"To prevail on an ineffective assistance of counsel claim," a criminal defendant "must show both that his 'counsel's representation fell below an objective standard of reasonableness' (the performance prong), and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' (the prejudice prong)." Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). "[F]ailure to satisfy one prong . . . obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010). A court may consider either prong first in the interest of efficiency. Ortiz-Graulau v. United States, 756 F.3d 12, 17 (1st Cir. 2014).

Under the performance prong, the defendant must show that, "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Rivera, 879 F.3d at 12 (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). This analysis covers all of the circumstances surrounding the challenged conduct or decision and requires "evaluating the attorney's conduct 'from counsel's

8

perspective at the time' and in light of 'prevailing professional norms.'" Id. (quoting Strickland, 466 U.S. at 688-89). Review of counsel's performance is "highly deferential" and subject to "a strong presumption that [it] falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A defendant faces an especially high burden in challenging counsel's tactical decisions. See Lucien v. Spencer, 871 F.3d 117, 129 (1st Cir. 2017).

For the prejudice prong, the defendant must show more than "that the errors had 'some conceivable effect on the outcome,'" but he does not have to "prove that the errors were more likely than not to have affected the verdict." Rivera, 879 F.3d at 12 (quoting González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001)). A reasonable probability is instead one that undermines confidence in the outcome. Id.

## II. **Analysis**

### A. **Sufficiency of the Evidence for the § 924(c) Conviction**

Gonsalves first contends that his trial and appellate attorneys were ineffective for failing to argue that there was insufficient evidence to support the jury's finding that he possessed a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c). No one testified that he had ammunition for the rifle or carried it during a drug transaction, Gonsalves explains, and Doran and Hernon stated that he possessed the rifle

9

for only a few weeks. Because there was no testimony that the firearm was loaded or that he ever conducted a drug transaction while carrying the gun, Gonsalves claims his attorneys were ineffective for not arguing in his motion for a directed verdict or on appeal that the Government failed to show "a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime." United States v. Pena, 586 F.3d 105, 113 (1st Cir. 2009).

Gonsalves has not shown prejudice because the Government did present sufficient evidence to convict him under § 924(c). Gonsalves, 859 F.3d at 110-12. As the First Circuit recognized, the testimony of Doran and Hernon supported a finding that Gonsalves kept a rifle "near a drug distribution point for 'protection from robbery of drug-sale proceeds,'" which suffices to show the required nexus. Id. at 111 (quoting United States v. Carlos Cruz, 352 F.3d 499, 509 (1st Cir. 2003)). Accordingly, the Government showed more than just the "presence of a firearm in the area where the drug offense occurred." Pena, 586 F.3d at 113.

Gonsalves criticizes his attorneys for not pointing out that no witness testified that the rifle was loaded or used during a drug deal. Neither fact is a requirement to convict under § 924(c). See United States v. Grace, 367 F.3d 29, 35-36 (1st Cir. 2004) (finding sufficient evidence to convict the defendant under § 924(c) where the police found an unloaded gun, drugs, and

10

sales proceeds in the defendant's residence). Gonsalves also notes that Doran testified that he told her he had the rifle because it was cool. A court must "consider the evidence in the light most favorable to the verdict[]" on challenges to the sufficiency of the evidence, United States v. Pena, 910 F.3d 591, 597 (1st Cir. 2018), however, and the jury was free to believe, as Hernon reported Gonsalves told him, that he owned the rifle for protection. Without a plausible argument about the sufficiency of the evidence, Gonsalves cannot show a reasonable probability that he would have won a directed verdict or appeal had his attorneys raised this issue.

## B. Calculation of Drug Amount at Sentencing

Gonsalves next claims his appellate attorney was ineffective for failing to argue that the drug amount at sentencing was calculated in a manner forbidden in United States v. Candelaria-Silva, 714 F.3d 651 (1st Cir. 2013). The Court determined the drug amount by dividing the gross proceeds the jury attributed to Gonsalves at the forfeiture trial by $20, the average sales price per pill, and then adding the number of pills that were seized (and thus could not have been forfeited). The Court should not have relied on the jury's gross proceeds finding, Gonsalves contends, because the Government made exaggerated estimates during its arguments to the jury of the pill amounts carried by various runners and the jury was never told to ignore the 40,000

pills Gonsalves consumed himself. Gonsalves argues that the Court calculated an erroneously high base offense level using the jury's speculative estimate.

This argument fails on both the performance and prejudice prongs. Gonsalves's appellate attorney devoted almost half of the argument section of his opening brief to reasons why the drug quantity the Court used to calculate the sentence was erroneous. In his brief, the attorney made the same arguments Gonsalves raises now concerning the exaggerated estimates of pill amounts and the pills Gonsalves personally consumed. Gonsalves asserts that the arguments his attorney made on appeal concerned the Court's calculation of the drug amount while he now raises issues with the jury's forfeiture calculation. Because the Court based its calculation on the jury's forfeiture amount, this is a distinction without a difference.

Even if his appellate attorney provided constitutionally deficient representation, Gonsalves cannot show prejudice. He claims the unlawful calculation of the drug amount caused an increase in his guidelines range. An error in calculating the guidelines range "most often will" suffice to show prejudice, "whether or not the defendant's ultimate sentence falls within the correct range." Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016) (interpreting the identical prejudice standard for plain error under Federal Rule of Criminal Procedure 52(b)).

However, such an error is not prejudicial if there is "a clear statement in the record showing [it] did not influence the sentence imposed." United States v. Taylor, 848 F.3d 476, 498 (1st Cir. 2017); see also Molina-Martinez, 136 S. Ct. at 1346 (explaining that the defendant would suffer no prejudice if the record shows "that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range"). As the First Circuit recognized, the Court clearly stated it would have imposed the same sentence even if it made an error in its guidelines calculations. Gonsalves, 859 F.3d at 113; see also Dkt. No. 476 at 38:2-5 ("Even if my criminal Guideline sentencing turns out to be incorrect in some [respect], this is what I think is sufficient but not greater than necessary to serve the purposes of punishment."). Because the guidelines range did not affect the Court's sentence, Gonsalves cannot show a reasonable probability that, but for his appellate counsel's failure to raise this argument, he would have received a lower sentence.

## ORDER

For the foregoing reasons, Gonsalves's motion to vacate his sentence (Docket No. 507) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge